Good morning your honors. Good morning. My name is Anjali Prakash and I am a teaching fellow with the Georgetown Appellate Litigation Program. I'd like to introduce my student, Teresa Rubinger. Ms. Rubinger will be arguing the case as student counsel on behalf of and with the permission of Petitioner Malvin Josue Rodriguez Cabrera. Thank you. Thank you. May it please the court. A conviction under the Virginia gang participation statute. Does not categorically involve moral turpitude because the minimum conduct for a conviction requires neither morally reprehensible conduct nor morally culpable intent. I would like to first discuss these two elements of a crime involving moral turpitude before addressing administrative exhaustion. The commission of a crime does not alone involve moral turpitude. Rather there must be both reprehensible conduct and morally culpable intent present under all permutations of the statute to render an ordinary criminal conviction into one involving moral turpitude and thereby subjecting a person to deportation from this country. First the Virginia gang participation statute reaches conduct that simply cannot be said to be morally reprehensible. The element that the person commit a predicate criminal act may be satisfied by a violation of one of dozens of state statutes, many of which cannot be said to be evil, depraved, or reprehensible. For example, defacing a public library book or trespassing on a public school soccer field after dark, which are both predicate criminal acts encompassed by this statute, simply do not meet this high threshold of evil or depraved conduct. In addition, the underlying predicate criminal act for which Mr. Rodriguez Cabrera was convicted, a simple assault, a misdemeanor offense under Virginia law, has been held by the BIA previously not to involve moral turpitude. Moreover, and as the government admits here, membership in a gang is not in itself conduct. People, especially young people, join gangs for many reasons, including for fear of victimization by other gang members or for particular circumstances within their own communities. And in association with element under Virginia law does not require that the person act with the shared object as another gang member, just that the two members share an intent to commit the underlying predicate criminal act, which could cover a shared intent, as I've previously noted, to trespass on a public school soccer field. Can I ask you a question? I'm just trying to get a handle on how much of your argument turns on this particular Virginia statute. If we just assume for a moment, hypothetically, that the government is right and that under the Virginia statute in association with does require a conscious motive to advance the gang's interests, would that change your argument or would you still be saying, would you still have an argument that, okay, fine, you have to be trying to advance the gang's interests, but that's still not enough to make something a crime involving moral turpitude? I believe that's still not enough to make something a crime involving moral turpitude for the reasons I noted previously, and that membership in a gang could turn on a number of factors and therefore doing something in association with a gang. But even with a conscious motive to advance the gang's criminal interests. I believe that that would be a different inquiry, but I don't think that that is embodied in the meaning of association. I understand that you don't think the Virginia law does that. I just am trying to figure out. It seems to me there are two arguments floating around the case law in this area, and one has to do with whether these gang enhancement statutes are limited to gang-related activity or not. And then another, there's another position out there that says even if they do only cover gang-related activity, that's still not enough to make something like trespassing on a soccer field. Two members of a gang go onto the soccer field and they're crossing the soccer field on their way to a gang meeting. I don't know if gangs have meetings, but they're on their way to do something in support of the gang. Is that enough to make trespassing on the soccer field a crime involving moral turpitude? So I feel like there are two different ways one could argue these cases, and I'm just trying to get a handle on which one you're emphasizing. Sure, Your Honor. I think we do note both in our briefs, and I think that the way... You think they give an independent reason for finding that this is not a crime of moral turpitude? I think that's what we're trying to get at. Do you need all this, or what is your argument? Our argument is essentially that because these individual pieces of the statute do not involve moral turpitude, then the inassociation with element of the offense does not transform these other elements into the evil or depraved conduct necessary to constitute a crime involving moral turpitude. What about the other two prongs? Let me ask my question that way. And I'm not trying to get into issues about divisibility, but just saying the statute only covered actions taken under those two prongs. It didn't have the inassociation prong. What then? Would this be... Sure, for the benefit of or at the direction of... No, I don't think that moral turpitude went in here in either of those instances as well. And indeed, the Ninth Circuit opinion in Hernandez-Gonzalez addressed a higher level of intent than association. In that statute, the court dealt with... Or in that case, the court dealt with a statute that included a specific intent to further benefit or assist a gang. And even then, the court concluded that that did not involve moral turpitude. So we would say that the Virginia statute here includes less serious conduct and certainly a less strict standard of intent. And therefore, the same reasoning would apply. And furthermore, this inassociation with element truly is a broad characterization that would sweep across virtually any connection with a gang. And so for that reason, the statute brushes a broad brush across just a wide range of conduct and a wide range of connections with a gang. And therefore... So for immigration purposes only, could Congress adopt the statute that said any person who commits any criminal act for the benefit of a gang or in association with the gang shall be deemed to have committed an act of moral turpitude for immigration purposes? I believe Congress could pass such a statute, but there's no such statute here. The inquiry is whether under the categorical approach, the minimum conduct required by a statute involves moral turpitude. And here, it simply does not rise to that level. So is your argument as opposed to... I can't remember which state in another case, it may have been California, doesn't have a specific language for furthering the criminal goals of the gang. Is that what's defective about the Virginia statute for purposes of this case? I believe that's one of the defects of this Virginia statute in terms of determining whether or not it involves moral turpitude. There would need to be a higher level of intent to conclude that. However, the broad terms of this statute also just encompass so much conduct that in association with element, as I noted previously, covers a multitude of connections to a gang. And similarly, the definition of predicate criminal acts is it covers a broad range of conduct. And the Virginia legislature there specifically enumerated dozens of provisions under which a defendant could be prosecuted under this statute. And no malice was needed for many of those things? For some, I'm sure that there are, but for the minimum... But none was needed for some of them? Sure. You're the least, right? For the least, I don't think there's any malice needed. That's what I'm saying. Yes, that's correct, Your Honor. And so because that is the case and this statute encompasses a broad range of conduct, including some of these minor offenses, misdemeanor offenses, and even violations of local ordinances, that conduct just cannot be elevated by committing it in association with a gang. Indeed, the Virginia legislature specifically chose to criminalize these predicate criminal acts. It enumerated these acts specifically in the statute. But the reasons that the Virginia legislature may deem certain behavior committed in association with a gang is a distinct inquiry from whether or not the conduct involves moral turpitude. The Hernandez-Gonzalez opinion, again, recognized that there's a distinction between moral turpitude and criminality. And moral turpitude involves a much higher threshold of conduct. And the BIA here in its decision relied almost exclusively on sources that explain why the Virginia legislature chose to criminalize certain conduct, as opposed to why that conduct somehow becomes evil when it is performed in association with a gang. Can I ask you a question about the Morris case? I know you're relying very heavily on the Morris case for the scope of the Virginia statute. And I understand sort of what you're saying about the rule in Morris, but the facts in Morris did involve violent gang activity. Yes, Your Honor. And is there any reason to think that the Virginia courts would sort of apply the statute outside of that context? Yes. I believe under the terms of the statute, it's extremely realistic. And indeed, the legislature intended that the statute would apply to such contexts, both by its definition of specific predicate criminal acts that don't involve violence or any sort of offense involving moral turpitude. But also by the careful definition... Well, moral turpitude's not... I mean, that doesn't come into the state prosecution at all. Yes, that's correct. And so the... but the point I'm trying to make is that the underlying predicate criminal act doesn't need to be such a violent behavior, as is noted in the Morris case. And indeed, in this specific case, the underlying predicate criminal act was an assault offense under Virginia law, which is a misdemeanor case. I would like to briefly touch on the administrative exhaustion issue. The 3rd, 6th, and 10th circuits have each exercised jurisdiction over a non-citizen's review of an IJ's final removal order when the legal issue underlying the order was considered by the BIA, which then remanded the case to the IJ. In each decision, the court held that the administrative exhaustion requires one presentation of an issue to the BIA. Those courts also recognize that the purpose of administrative exhaustion would not be served by imposing on a non-citizen what would be equivalent to a motion to reopen or a motion to reconsider. The non-citizen, Mr. Rodriguez-Cabrera here, petitions this court for review of the sole legal issue that has been litigated before both the IJ and the BIA. And for that reason, he exhausted his administrative remedies. Is there no further questions? No, I don't think we have any. Thank you very much. Thank you. May it please the court, Victoria Braga, appearing on behalf of the Attorney General. The court should dismiss, and in the alternative, deny the petition for review. Dismissal is appropriate here where petitioner failed to exhaust his administrative remedies. Alternatively, denial is appropriate here where petitioner's offense categorically qualifies as a CIMT, rendering him removable as charged. So what purpose would be served by having the appeals? Well, the Board of Immigration Appeals in this case, importantly, never resolved the issue of removability. The board said that petitioner's offense categorically qualified as a CIMT. But he's not contesting anything except this moral turpitude question. He's not contesting any of the other findings with regard to removability, is he? He does not contest, and the record does make clear that his offense was committed within five years of his admission and that it carried a sentence of imprisonment of one year or longer. However, the problem in this case is that there's no definitive agency finding on removability. There's a removal order from the immigration judge, and there's a board decision which says that his crime qualifies as a CIMT. Removability is left, I would say, based on the record, unsettled. The remand from the board says that the immigration judge should conduct further proceedings and enter a new decision. Well, if it's unsettled, I mean, that's the Homeland Security's problem. It's not the immigrants' problem. Well, it's unsettled in this case because petitioner chose to waive his appeal to the board, meaning that there was no record of any oral decision that the immigration judge rendered in the case or any transcript of the proceedings. But the only issue we have here is, is there a crime of moral turpitude, which the board decided in its first decision? There's nothing else that's before us. Is that correct? That is what petitioner is putting before the court, but we would argue that... Well, he's the one that puts the things before the court, right? Well, we would... You don't want to stay with the agency rule, so... No, we would argue that petitioner doesn't have the right to put anything before the court because he hasn't exhausted... No, but we would argue that the petition should be dismissed because petitioner did not exhaust his administrative remedies. 8 U.S.C. 1252 G1 clearly provides that this court may consider petitions for review only if the alien has exhausted all of his administrative remedies. So if the alien has not exhausted... He brought his issue to the BIA first. That's why we care about exhaustion, so that the agency will have a chance to review the issue before we do. The agency with its expertise to protect its own jurisdiction gets to pass on it first, and it did. It passed on the issue of whether the offense qualifies... And that's the only thing he's asking us to pass on. Well, I don't know if that is exactly true. Before this court, there is an ineffective assistance of counsel claim made in informal briefing. It was not re-litigated in formal briefing, but these are the sorts of things that the agency needs to... We won't pass on that. I'm sorry? What if we don't pass on that? On the ineffective assistance claim? Again, I just think that even petitioners recognize that the posture of this case is such that the court needs to assume certain things about what happened, and the record created doesn't clearly show that everything that the agency said about removability, and even everything that the agency said about this offense qualifying as a CIMT, I mean, the immigration judge's decision, or I'm sorry, his hearing notice on remand, says that the hearing would be to address the contested charge and footnote three of the board's decision. Footnote three of the board's decision discusses the two elements of his charge of removability that there's no conclusive finding on, but the fact that the immigration judge is saying he'll address that and the contested charge of removability, I think, leaves room that there were other things said about removability and about this offense qualifying as a CIMT on remand. We don't know what they were, and the board does not pass on those issues. I would note that this case is different. He doesn't raise anything further. He just says that it's a matter of law that there's not a crime of moral turpitude under the categorical approach for purposes of immigration removal. That's the issue that the board decided, and that's what he's brought here, and it seems like to me if there's any other defect out there, that's not his problem because he's not contesting anything. Well, I think to the extent that you're saying that he is contesting removability and the that it did remand, in the Third Circuit's case, they noted finding administrative exhaustion. They noted that there were no new conclusions of fact or law that were needed to be made, and that's why you could find that administrative exhaustion was met. Here, clearly, that is not the case. The board remanded with the specific purpose that new conclusions of fact and law arguably be made. So I think that the case is distinguishable as we have discussed in our brief, and I would note that exhaustion is not something that can be excused. It is jurisdictional. So the court here would have to find, in this case, in what happened and how the petitioner chose to proceed, he has exhausted his administrative remedies. And it is the government's position that under these circumstances, the requirements of administrative exhaustion have not been met. We would ask the court to reach the CIMT issue or whether the offense categorically qualifies as a CIMT, to not find exhaustion in this case, but to assume exhaustion. And assuming exhaustion, moving on to whether petitioner's offense qualifies as a CIMT. But I'm sorry. Are you saying that even though you think there wasn't exhaustion, you don't want us to dismiss? You want us to reach the merits? No, I'm sorry. I don't want to misstate our position. OK, I'm sorry. So I'm saying that if the court— If you disagree. If you disagree and find that—we would ask that if you disagree, you assume exhaustion. Why would we do that if we disagree? I don't know. We disagree. We disagree. Yes, it's the government's position that administrative exhaustion has not been met here. I think ultimately, I'm saying not if you disagree, but I think that there's a way to reach the CIMT issue without deciding the exhaustion issue in this case. Why is the government pursuing it then? It's a crazy argument. You just told us it was jurisdictional. So if you've raised it as jurisdictional, we don't have a choice but to reach it, do we? You're just making some more precedent. It is a jurisdictional issue, so the court would have to dismiss if it agreed with our position. If the court does not—we're saying that the court does not need to explicitly decide that there was administrative exhaustion here, the court could assume—courts often assume jurisdiction. So we're asking— Well, I don't think this court does. You may be familiar with other courts that assume they have jurisdiction even if they don't. But we're not one of them. Okay. Why don't we just—we're going to assume, okay, for purposes of the rest of the argument, that we have jurisdiction. So why don't you move on and tell us about the rest of it. Why don't you start with this. So you have a gang member as defined in the statute, Virginia statute. And the gang member walks across the schoolyard on his way to the grocery store to give his mother a loaf of bread. Now, that's an offense under the Virginia statute because he's a gang member. He crossed the schoolyard. You would agree that that's not a crime of moral turpitude. If he is convicted of walking across the schoolyard in violation of Virginia law, no, that is not a crime of moral turpitude. All right. So then the next day, he walks across the same schoolyard, but instead of going to the store to give his mother a loaf of bread, he's going to a gang meeting. So what happens in that circumstance? Well, I would clarify that I do not think he could be convicted under the specific statute at issue here for that conduct. He would have to... I suppose he could. I think petitioners are arguing here that we need to consider the conviction as acting in association with the gang. So I think that would imply... All right. He and two other gang members walk across the schoolyard. Right. And they're all going to the same store and they're all going to buy their mothers a loaf of bread. I think that does change the hypothetical. I think that the board has been... We know it changes the hypothetical. We've got that. So is that, for any of those gang members, is that a crime of moral turpitude? For all of the gang members, it would be a crime of moral turpitude because the reprehensibility of the offense, which is one of the elements of a crime of moral turpitude, comes from the gang-related element. And it's gang-related for three gang members to cross the schoolyard to get the bread for their mothers. That's gang-related activity because they're all gang members and they know that they're all gang members. So you're agreeing that's covered by the Virginia statute and that's a crime involving... I'm sorry. I guess I wasn't considering the part of the hypothetical where their aim was to buy bread for their mothers. That's right. I think inherent in this... But they all knew that they were crossing the schoolyard impermissibly and they knew each other were gang members. I'm not sure that that crime would be prosecuted under this Virginia statute as Virginia prosecutes the statute as... Well, let's assume that the Virginia prosecutor is very zealous and he did prosecute. And he gets a conviction. Or she gets a conviction. Well, if the conviction was under this statute, then yes... Well, the conviction is for crossing the schoolyard. That's a separate Virginia misdemeanor statute, which is a predicate act. That's what the conviction is for. So that is not... That would not be a CIMT as related to any of the gang members. However, if any of them were convicted for that conduct under this Virginia statute that's at issue in the case... Notably, this is different from the case in the Ninth Circuit where it was a gang enhancement statute. This is a separate and distinct statute. So I think while in your hypothetical the aliens may have been convicted for the predicate offense, they would not, as Virginia applies this statute, be convicted of the gang participation. As they walk across the same yard and they are going to a gang meeting. So they're in association with each other as they walk across the schoolyard and they're in association when they get to the gang meeting. And they're prosecuted. And there's a conviction under the Virginia statute, both the misdemeanor statute and this particular statute. What happens then? Their offenses would qualify as CIMTs as inherent in this Virginia statute. The gang participation statute is an intent to a conscious motivation or an intent to purposes of the gang to further a gang's criminal objective. And that's found it's not explicitly stated in the statute as the California statute explicitly stated that in matter of E.E. Hernandez. But the board in analyzing this question looked at the three prongs of the statute and looked at Virginia case law interpreting and applying the statute and indicated that this statute in Virginia is applied to members of gangs who have conscious motivations to further the criminal objective. So it would be morally reprehensible for the gang members to walk in concert to go to a gang meeting. That's all they do. That's a crime of moral turpitude as a matter of law in and of itself. Yes. And it's the gang related conduct that or the gang related element of the crime that makes the conduct reprehensible. I think the board in this case and in several other cases talk about the dangers that gang violence separate and apart from just criminality pose to society. Notably in matter of E.E. Hernandez, the board says that crimes committed by gang members pose dangers to the public and difficulties for law enforcement not generally present when a crime is committed by someone with no gang affiliation. The crossing of the parking lot presents, or I'm sorry, the soccer field presents these unique concerns because that's the crime that was committed. And the crossing of the parking lot. Well, the crime that needs to be focused on is gang participation. So it's not the crossing of the soccer field. Yes, it is. Without it, there wouldn't be a crime. It is an element of the offense. Right. An element of the crime. Right. And I would argue that petitioners are asking the court to analyze this Virginia gang participation statute to apply a categorical analysis to each element. And that's not how the court should analyze the crime. The court needs to analyze the elements together. So only one element of this Virginia gang participation crime is that a predicate offense be committed. Another element is that. But you have to have all the elements. You do have to. You do have to have all of the elements. But the statute needs to be looked at as a whole. And the statute requires not only that element. Yes, that element is satisfied. A predicate crime is committed. But another important element and the element that makes the statute criminalize morally reprehensible conduct is the fact that that crime, that predicate offense has to be committed at least in association with a gang. I think the definition of gang under Virginia law is relevant in that gangs are defined as organizations which have as their primary objectives committing criminal activities. And a gang is defined additionally as an organization of which its members have committed at least two predicate offenses, one of which is a crime of violence. So gangs are defined as violent organizations. When you look at the statute as a whole and you consider that you have a person committing a crime, he additionally, separate and apart from committing a crime, he is a gang member or a gang participant. And he is committing this crime in association with other gang members, members of an organization who have as an objective committing crimes and whose members have committed violent crimes. That is where the reprehensibility comes from. And that is when you look at the Virginia case law, I think you can see how particularly in case Henderson v. Commonwealth, it's a Virginia Supreme Court case of 2013. It cites other Virginia cases in saying awareness of the dangerous proclivities of criminal street gangs has become a lamentable feature of urban life. I think if you look to a lot of the case law, you see a lot of references to intimidation caused by gang conduct. Right. I don't think anybody questions that gangs can be a very bad thing, but we're constrained by the terms of the statute and our canons of construction where we're using the categorical approach. Under the categorical approach, it's not everything that counts because there can be some items that don't meet definition. But I take it your position here is that any predicate act is defined in the Virginia Code, no matter how benign, non-violent, non-threatening, that in and of itself, when you add the gang factor, transforms into a crime of moral turpitude, end stop. Yes. The government argues that the reprehensibility of the statute, which is one of the elements of a CIMT, comes from the gang-related element of the statute. And we argue that because this offense, as criminalized under Virginia law and as interpreted by Virginia courts, requires a conscious motivation to promote the gang's criminal objectives and interests. We argue that that reprehensible element of the statute is accompanied by a culpable mental state. I'm sorry. I just want to be sure I understand your argument. If we just assume hypothetically, I don't read the Virginia case law the same way you do, and I don't think that that conscious, I think you can be convicted under the in association with the crime without that conscious intent to further the gang's criminal activities. Is the government's position that even so, this is a crime of moral turpitude or is your reading, which I know you do stress several times, is that sort of a necessary element of your argument? I would say that that conscious motivation to further the interest is a necessary element of the argument. That's great. I have two points that I'd like to discuss regarding to that. The first is that the board in its decision noted that this conscious motivation, there's no question that there's this conscious motivation to further the gang's interests regarding the, for the benefit of, and at the direction of. I'll just stop you right there because I thought this part was so interesting because, and then the board says we should treat the three the same. But in Morris, the Virginia court says the exact opposite. These are three things that are connected by an or, and if you treat them the same, you've rendered at least one of them superfluous. So the one thing we know is that in association with cannot mean the same thing as the other two. So I don't understand how we square the BIA's reading with the more authoritative reading of the Virginia court. Well, I don't know that the Virginia case law explicitly says that. It does in Morris. You can prove this in the alternative. No, I understand that. And we do argue that this is likely a divisible statute in that regard. You wouldn't have to reach divisibility if it is categorically a CIMT though. But I think that the Virginia case, Morris especially, it talks about even being convicted under the in association with element, there has to be an awareness. But it clearly rejects the BIA's mode of statutory analysis, correct? There is no way to square the BIA's form of statutory construction with what the court said in Morris. The BIA says these three things, we should assume they mean roughly the same thing. And Morris says the one thing we know is they don't mean the same thing. I don't know that I would say that Morris says they don't mean the same thing. I think that Morris is saying that. OK, why don't you assume for purposes of answering the question that we have fairly characterized what the Morris court said. Then you have, don't you, a conflict between the rationale of the administrative agency and the more authoritative ruling on this interpretation of this court by the Maryland, by the Virginia court. My time has expired. May I answer? You can answer the question. I'm sorry. So I just want to understand your question. Yes, I do think that that would be correct, that if Morris does explicitly say that these cannot mean the same thing, as opposed to just saying that these are just different elements of the offense, then the board's reasoning would not square with that. I think that that does go. And you would agree with us that the Virginia court's interpretation of its own statute is what we look to, right? I would. OK, I think your time has expired. Unless you have something else you want to say about that. No, thank you. Thank you. I'd like to make two brief points. The first is to slightly push back on the definition of criminal street gang that my opposing counsel made. Under the definition of criminal street gang, that includes any ongoing organization, association, or group of three or more persons, whether formal or informal, which has as one of its primary objectives or activities the commission of one or more criminal activities, which has an identifiable name or identifying symbol, whose members individually or collectively have engaged in the commission of, attempt to commit, or conspiracy to commit, there are a few other terms, two or more predicate criminal acts, at least one of which is an act of violence. So under this statute, the defendant who's being convicted doesn't need to be the person who individually committed an act of violence. I wanted to clarify that point for the record. And the second point is to just underscore this notion that the criminality of an offense and the moral turpitude of an offense are two distinct inquiries. So simply repeating the reasons why the Virginia legislature decided to criminalize gang-related conduct is distinct from asking whether or not this conduct categorically involves the morally reprehensible conduct necessary for a crime involving moral turpitude. If there are no further questions, I will briefly conclude by saying that because the Virginia gang participation statute does not categorically involve the evil intent or reprehensible conduct of a crime involving moral turpitude, we ask this court to reverse the BIA's decision and to vacate Mr. Rodriguez-Cabrera's removal order. Thank you. Thank you very much. We will ask, we understand you were court appointed, is that not right? Yes, that's correct. And you did an excellent job. And you probably are associated with a lot of other folks that worked on this too. Yes. And we thank you all. Thank you. We will ask the clerk to adjourn court and then we'll come down and greet the lawyers. This honorable court stands adjourned. Sign and die. God save the United States and this honorable court.
judges: Diana Gribbon Motz, G. Steven Agee, Pamela A. Harris